# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 16-CV-7179 (JFB)
_____

RAUL IZAGUIRRE,

Petitioner,

VERSUS

WILLIAM LEE,

Respondent.

_____

**MEMORANDUM AND ORDER**
October 10, 2017
_____

JOSEPH F. BIANCO, District Judge:

Raul Izaguirre (hereinafter "petitioner") again petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his resentence in Supreme Court, Nassau County. Petitioner was convicted in a judgment rendered on September 9, 2005, following a jury trial, of manslaughter in the First Degree (N.Y. Penal Law § 125.20(1)) and was sentenced in County Court, Nassau County to twenty-five years in prison with five years of post-release supervision.

Petitioner then challenged his conviction and sentence in this Court, and by Memorandum and Order (the "Memorandum and Order") dated April 25, 2012, the Court granted habeas relief on the ground that petitioner's sentence was "unconstitutionally vindictive." *Izaguirre v. Lee* ("*Izaguirre I*"), 856 F. Supp. 2d 551, 572-80 (E.D.N.Y. 2012).[1] The Court accordingly ordered that "[p]etitioner be resentenced before a judge other than the one who delivered the sentence at issue . . . ." *Id*. at 580.

Following the Memorandum and Order, New York Supreme Court Justice Arthur M. Diamond resentenced petitioner to an identical term of twenty-five years' imprisonment with five years' post-release supervision on June 14, 2012. In the instant petition ("Pet.," ECF No. 1), petitioner challenges that resentence on the following grounds: (1) the resentencing court ignored

---

[1] The Court, however, found that petitioner was not entitled to habeas relief based on his claims that (1) there was insufficient evidence to support his conviction; (2) the state court improperly attempted to persuade petitioner to plead guilty; and (3) the sentence was harsh and excessive. *Id*. at 555.

1

this Court's mandate in *Izaguirre I*; (2) the resentence was unconstitutionally vindictive; (3) the resentence was harsh and excessive; and (4) the resentencing court failed to obtain an updated probation report prior to imposing resentence. For the reasons set forth below, the Court concludes that none of these claims merits habeas relief.

I. BACKGROUND

A. Facts

The Court summarized the facts pertaining to petitioner's conviction in *Izaguirre I*, 856 F. Supp. 2d at 557-59, and it assumes the parties' familiarity with them. In short, after Marvin Valle ("Valle") was found dead on June 24, 2003, petitioner was arrested and indicted for that homicide. *Id*.

B. Procedural History

1. *Izaguirre I*

a. State Court Proceedings

As set forth in the Memorandum and Order,[2] prior to trial in County Court, Nassau County, the Nassau County District Attorney's Office (the "State") engaged in substantial plea bargaining with petitioner. *Id*. at 559. In return for his willingness to enter a plea of guilty, the State offered to reduce petitioner's criminal manslaughter charge to a class C violent felony, punishable by a sentencing range of three-and-one-half to fifteen years in prison. *Id*. According to petitioner, the State offered to recommend an eight-year prison sentence and two years of supervised release. *Id*. Petitioner steadfastly refused to enter a guilty plea, apparently acting under the mistaken belief that he could not be convicted lest the prosecution produce an eyewitness to the killing. *Id*. On the first day of trial, petitioner's counsel, outside the presence of the jury, made a lengthy statement for the record. *Id*. Defense counsel expressed his preparedness to proceed to trial, but nevertheless indicated that he believed a guilty plea to a lesser charge would have "been in [petitioner's] best interest." *Id*. Petitioner's counsel said:

> I told [petitioner], that he is a young person, that he should be able to go home and raise his family, rather than his grandchildren, and I believe that at this point in time, right before the selection of the jury, he should reconsidering [sic] his options . . . .
>
> Judge Donnino spoke with him. I, again, spoke with him, and I have expressed with him my concerns, the fact that he could be convicted based on the evidence . . . .
>
> I believe he, in his mind, believes that under New York State law that he could not be convicted unless somebody comes in and directly indicates that they saw him stab the deceased.
>
> I have tried to express to him the fact that's not required. I have gone through this with him numerous times explaining to him the law and the consequences of his decision.

*Id.* Counsel then went on to make clear that, notwithstanding his prior efforts to educate his client with regard to the perils of going to trial, petitioner still had a chance to plead guilty to his crime:

---

[2] The Memorandum and Order cited to the record underlying the first habeas petition in *Izaguirre v. Lee*, 10-CV-3216 (JFB), but the Court has omitted those citations herein and instead references *Izaguirre I*.

2

> [Petitioner] has indicated to me that he understands it and that he wishes to proceed. But I want to be clear, the fact that he has this last opportunity right before the jury is brought into this courtroom to review his options, to see that this might be in his best interest to take this disposition.

*Id*. at 559-60.

The presiding County Court justice then asked, "Mr. Izaguirre, do you understand that if you are found guilty after this trial you will do 25 years in prison?" *Id*. at 560. After petitioner responded that he understood but maintained his innocence, the court made additional remarks in an apparent attempt to correct petitioner's possible legal misapprehension and to fully apprise petitioner of his options:

> Mr. Izaguirre, I don't know whether you are guilty or not guilty, but what your lawyer seems to feel is that you don't understand the law of the State of New York, which would make sense since you are not a lawyer and have never been in any kind of trouble before.
>
> The prisons are filled with people who were convicted of crimes where there was no eye witness, and they are filled with people who feel they were wrongfully convicted because there wasn't enough evidence, or who have convinced themselves that there wasn't enough evidence. Those people are not necessarily the kind of people you want to spend the next 20 years of your life with.
>
> You are a very young man. You also have an immigration hold. You will probably, if you get convicted, never see daylight again, because you will probably sit in a New York State facility for at least 20 years and then be deported to . . . Honduras, and I don't know what they will do to you in Honduras after having served a prison sentence here.
>
> Your best chance is, if you wish to plead guilty, is to enter a plea, take the ten years, and hope they will forget about your immigration hold . . . .
>
> So, I hope that you understand all of these factors and you understand that the evidence is against you, there are numerous statements that [the State] claim[s] you made to other people in which you admitted to this . . .
>
> I don't know whether you are guilty or not guilty, but I know that the district attorney is prepared to put forward a case . . . and only you know what the truth is here and only you know what is in your best interest.
>
> But once I bring that jury in and we start selecting them, any question as to whether you want to plead guilty or not is going to disappear. Do you understand?

*Id*.

After answering in the affirmative, petitioner proceeded to trial by jury on February 23, 2005, and the jury found him guilty of Manslaughter in the First Degree on March 18, 2005. *Id*. On September 9, 2005, the County Court sentenced petitioner to twenty-five years' imprisonment with five years of post-release supervision. *Id*. at 561.

3

### b. Federal Habeas Proceeding

Following a direct state-court appeal of the conviction and sentence, as well as a collateral proceeding instituted pursuant to New York Criminal Procedure Law § 440.10, petitioner sought federal habeas relief on July 6, 2010. *Id*. In the Memorandum and Order, this Court denied relief based on petitioner's claims that (1) there was insufficient evidence to support petitioner's conviction; (2) the state court improperly attempted to persuade petitioner to plead guilty; and (3) the sentence was harsh and excessive. *Id*. at 555.

However, with respect to petitioner's claim that the sentence was "unconstitutionally vindictive," the Court determined, "[a]fter carefully reviewing the record, [that] there [was] no question that . . . a reasonable likelihood of actual vindictiveness exist[ed] before the trial even began [because] the County Court plainly told [p]etitioner the sentence he would receive—namely, the non-mandatory, statutory maximum—if he were convicted at trial." *Id*. at 574. Moreover,

> [f]ollowing the jury rendering a guilty verdict, the County Court did, in fact, sentence [p]etitioner to 25 years' imprisonment. Although it [was] possible that no actual vindictiveness existed on the part of the County Court during the sentencing process, the pre-trial announcement that [p]etitioner would receive the statutory maximum sentence followed by the post-trial issuance of the promised statutory maximum sentence (which was discretionary, rather than mandatory) certainly raise[d] a reasonable likelihood of actual vindictiveness.

*Id*. Finally, the Court found that "the County Court [did not] affirmatively state sufficient reasons for the sentence imposed in order to rebut the presumption that it was motivated by actual vindictiveness in imposing the maximum statutory sentence as promised." *Id*. at 577.

As a result, the Court granted petitioner habeas relief and directed that "a writ of habeas corpus shall issue unless, within ninety days of the date of [the] Memorandum and Order, [p]etitioner is resentenced before a judge other than the one who delivered the sentence at issue in the instant petition." *Id*. at 580.

## 2. Resentencing

### a. Supreme Court Proceeding

Following the Memorandum and Order, petitioner appeared for resentencing on June 14, 2012 in Supreme Court, Nassau County before the Honorable Arthur M. Diamond. (S.[3] at 1.) At that hearing, the State said that Valle's family was "satisfied with [the] 25-year sentence that" was previously imposed and that petitioner committed a "brutal crime." (*Id*. at 3.) The State also highlighted the "great anguish" that petitioner had inflicted on Valle's family and said that petitioner had "expressed no remorse for his brutal acts . . . ." (*Id*. at 4-5.) Accordingly, the State requested a sentence of "at least 15 years' imprisonment" and that Justice Diamond "keep in mind the family's feeling that the 25-year sentence that was originally imposed was an appropriate sentence." (*Id*. at 5-6.) Valle's father also spoke at that

---

[3] "S." refers to the transcript of the June 14, 2012 resentencing proceeding. (ECF No. 12-11.)

4

hearing and requested "justice for [his] son . . . ." (*Id*. at 6.)

In response, petitioner's counsel[4] noted that the "probation report which was prepared . . . seven years ago" indicated that petitioner "was a hard-working immigrant pursuing a better life in the United Sates without criminal incident" before his arrest. (*Id*. at 7-8.) He also said that "[p]rison ha[d] been difficult for" petitioner, who had "not had any disciplinary issues since his nine years of incarceration" at that time. (*Id*. at 8.) Finally, petitioner's counsel noted that Valle "had too much to drink" prior to his death and said that "a stupid alcohol-fueled fight" precipitated petitioner's killing of Valle. (*Id*. at 9.) Thus, petitioner's counsel said that "the facts argue[d] for a sentence at the low end of the [applicable] range." (*Id*. at 9.) Petitioner also spoke at the resentencing hearing and said that he felt "very sorry" for Valle's family and that he had "had very tough times in prison." (*Id*. at 10.)

After hearing that testimony and argument, and upon review of the Memorandum and Order, "the entire trial transcript[,] and the probation report," Justice Diamond concluded that (1) petitioner's guilt was established beyond a reasonable doubt; (2) there was no justification or defense for petitioner's "senseless" and "cruel" crime; and (3) petitioner's "refusal even at this date to accept responsibility or show any remorse for what he did" was striking. (*Id*. at 11.) Therefore, Justice Diamond imposed "the maximum [sentence] that [was] allowed by law" for petitioner's conviction of Manslaughter in the First Degree: twenty-five years' imprisonment to be followed by five years of post-release supervision. (*Id*. at 12.)

b. Appellate Proceedings

On December 4, 2015, petitioner appealed the resentence to the Appellate Division, Second Department and asked that it be vacated on the grounds that (1) the resentencing court ignored this Court's mandate in the Memorandum and Order; (2) the resentence was unconstitutionally vindictive; (3) the resentence was harsh and excessive; and (4) the resentencing court improperly failed to obtain an updated probation report. (*See* Pet'r's Appellate Br., ECF No. 12-12.)

The Second Department affirmed the resentence on July 27, 2016 after concluding that (1) "the resentence was not presumptively vindictive, but rather a proper exercise of discretion by the Supreme Court"; (2) "the resentence imposed was not excessive"; and (3) petitioner's "remaining contentions [were] unpreserved for appellate review and, in any event, without merit." *People v. Izaguirre*, 35 N.Y.S.3d 655, 655 (App. Div. 2d Dep't 2016). The New York Court of Appeals denied petitioner leave to appeal on November 15, 2016. *People v. Izaguirre*, 28 N.Y.3d 1073 (2016).

C. The Instant Petition

On December 22, 2016, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the following grounds: (1) the resentencing court ignored this Court's mandate in *Izaguirre I*; (2) the resentence was unconstitutionally vindictive; (3) the resentence was harsh and excessive; and (4) the resentencing court improperly failed to obtain an updated probation report prior to imposing resentence. (Pet. at 6-11.) Respondent filed

---

[4] Petitioner was represented by a different attorney at the resentencing hearing than his trial counsel. (*Id*. at 9-10.)

a memorandum of law opposing petitioner's application on March 13, 2017 (ECF No. 12), and petitioner replied on April 6, 2017 (ECF No. 15).

The Court has fully considered the parties' submissions, as well as the underlying record.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

6

III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on the following grounds: (1) the resentencing court ignored this Court's mandate in the Memorandum and Order; (2) the resentence was unconstitutionally vindictive; (3) the resentence was harsh and excessive; and (4) the resentencing court improperly failed to obtain an updated probation report prior to imposing resentence. Respondent argues that the first and fourth claims are procedurally barred from federal review and that they, along with petitioner's other challenges, are also meritless. For the following reasons, the Court concludes that petitioner is not entitled to habeas relief and denies the instant petition.

A. Procedural Requirements

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), he still must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity," the prisoner must "'fairly present[]'" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the

7

petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted).

Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted [on] those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceedings." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

B. Analysis

1. Failure to Follow *Izaguirre I*

Petitioner first argues that he is entitled to habeas relief because, following the Memorandum and Order, "the newly assigned judge, Arthur Diamond, ignored his mandate, and re-imposed the very same sentence" that petitioner received from the County Court. (Pet. at 6.) As discussed below, the Court concludes that this claim is procedurally defaulted and, in any case, lacks merit.

a. Procedural Bar

Under New York law, a defendant must raise his objection before the trial court in order to preserve that issue for state appellate review. *See* N.Y. C.P.L. § 470.05(2); *People v. Gonzalez*, 55 N.Y.2d 720, 722 (1981); *People v. West*, 56 N.Y.2d 662, 663 (1982). New York's preservation doctrine is firmly established and regularly followed. *See Garvey v. Duncan*, 485 F.3d 709, 715-16 (2d Cir. 2007); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review

and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim" (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990))); *see also Fernandez v. Leonardo*, 931 F.2d 214, 215-16 (2d Cir. 1991).

In its state court appellate brief, respondent argued that petitioner's claim that Justice Diamond failed to comply with the Memorandum and Order was unpreserved because he did not present that argument to the resentencing court. (*See* Resp't's Appellate Br., ECF No. 12-13, at 23 (citing, *inter alia*, N.Y. C.P.L. § 470.05(2)).) As noted, the Second Department agreed that the preservation doctrine precluded appellate review of that contention. *See Izaguirre*, 35 N.Y.S.3d at 655. Therefore, petitioner's claim that the resentencing court violated this Court's directive in the Memorandum and Order is also procedurally barred from habeas review because the Second Department relied on an independent and adequate state procedural ground in addressing that issue. *See Garvey*, 485 F.3d at 715-16; *Glenn*, 98 F.3d at 724-25.[5]

Nevertheless, even if an independent and adequate state ground bars petitioner's claim, a claim may still be permissible for review in federal court if the denial of habeas relief would result in a miscarriage of justice. *Coleman,* 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *Id.* However, petitioner has not alleged any of these factors in his petition or reply brief, nor has he demonstrated that the failure to consider this claim would result in a miscarriage of justice. *See id.* Thus, the Court finds that this aspect of petitioner's habeas petition is procedurally barred from federal review.

b. Merits

In any event, even if petitioner's claim that the resentencing court violated the mandate in the Memorandum and Order were not procedurally defaulted, the Court would deny habeas relief on the merits.

After resentencing, but prior to filing his direct appeal in state court, petitioner informed this Court by letter dated August 8, 2012 that he intended to file another habeas petition on this ground. *Izaguirre v. Lee*, 10-CV-3216 (JFB), ECF No. 51. On August 29, 2012, the Court issued an Order concluding that,

> to the extent petitioner argues that habeas relief should be granted because respondent did not comply with the Court's [Memorandum and] Order, that argument has no merit. This Court ordered that petitioner be

---

[5] In addition, the Second Department's reliance on the preservation doctrine was also not exorbitant in this case. In *Lee v. Kemna*, 534 U.S. 362 (2002), the Supreme Court concluded that there is a limited category of "exceptional cases" in which the state appellate court applied a firmly established and regularly followed procedural ground in an "exorbitant" manner so that the application of the ground was inadequate, and a federal court was therefore not barred from reviewing that claim on the merits in a habeas appeal. *Id*. at 376. Having considered the factors set forth in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003), in connection with this exception, the Court concludes that the Second Department did not apply the preservation doctrine in an exorbitant manner with respect to this claim.

9

re-sentenced within ninety days before a different judge. That in fact happened, as petitioner was re-sentenced by [Supreme Court] Justice Diamond, not [County Court] Justice Berkowitz. Although petitioner was re-sentenced to the statutory maximum of twenty-five years, this Court did not preclude the state court from imposing such a sentence at the re-sentencing.

*Id.*, ECF No. 54. Petitioner has not presented any contrary arguments in the instant action or identified any portion of the Memorandum and Order that the resentencing court allegedly violated. Further, as noted in the August 29, 2012 Order, the Court did not prohibit re-imposition of a twenty-five year term of imprisonment following resentencing. Accordingly, the Court again concludes that this clam does not merit habeas relief.

2. Vindictive Resentence

Like he did in *Izaguirre I*, petitioner argues that, "[b]y again re-sentencing [petitioner] to 25 years' imprisonment, after the [State] had agreed to a plea deal of ten years or less, an inference arises that [petitioner] was punished for exercising his Sixth Amendment right to trial by jury." (Pet. at 8.) The Court disagrees.

As discussed in the Memorandum and Order, a sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *Wasman v. United States*, 468 U.S. 559, 567-68 (1984) (citing, *inter alia*, *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)). Claims of unconstitutional vindictiveness by the court were initially addressed by the Supreme Court in *Pearce* in the context of a higher sentence after a new trial. *Pearce* held that the Due Process Clause of the Fourteenth Amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725; *accord, e.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978). The Supreme Court in *Alabama v. Smith*, 490 U.S. 794 (1989), summarized its precedents on this issue:

> "In order to assure the absence of such a motivation [of vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear." [*Pearce,* 395 U.S. at 726.] Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by "'objective information . . . justifying the increased sentence.'" *Texas v. McCullough*, 475 U.S. 134, 142 (1986) (quoting *United States v. Goodwin*, 457 U.S. 368, 374 (1982)).

*Smith*, 490 U.S. at 799; *accord, e.g.*, *Correia v. Hall*, 364 F.3d 385, 388 (1st Cir. 2004) ("In the event a criminal defendant successfully appeals his conviction and the same trial judge imposes a stiffer sentence following a retrial, the presumption arises that the harsher sentence was a product of judicial vindictiveness in response to the defendant's rightful recourse to the appellate process; yet this presumption is rebuttable provided the record contains objective evidence which adequately explains the more severe sentence.").

10

However, the *Pearce* framework was not limited by the Supreme Court to sentencings after re-trials, but rather has been applied by the Supreme Court to other situations, such as claims of prosecutorial vindictiveness in connection with plea negotiations. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368, 373-83 (1982); *Bordenkircher v. Hayes*, 434 U.S. at 362. Although the Supreme Court made clear in those cases that it would be difficult to find such a presumption against a prosecutor in the context of the regular give-and-take of plea negotiations, it nonetheless made clear that this same rule applies to all vindictiveness claims, regardless of whether they involved a prosecutor or judge, or whether they occurred pre-trial, at trial, at sentencing, or at resentencing after a new trial. In other words, even though the ability to demonstrate a "reasonable likelihood of vindictiveness" to invoke the presumption might be more difficult in one situation as opposed to another, the rule is the same. Perhaps one of the clearest articulations of this well-established rule is contained in *Goodwin*, where the Supreme Court stated:

> [I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

457 U.S. at 373. Therefore, as it did in *Izaguirre I*, this Court concludes that this *Pearce* standard was clearly established federal law, as articulated by the Supreme Court, at the time of the Second Department's decision affirming the resentence.[6]

However, the Court concludes that the *Pearce* presumption does not apply to the resentencing proceeding. In the Memorandum and Order, the Court found a "reasonable likelihood of vindictiveness" based on "the pre-trial announcement that [p]etitioner would receive the statutory maximum sentence followed by the post-trial issuance of the promised statutory maximum sentence (which was discretionary, rather than mandatory) . . . ." *Izaguirre I*, 856 F. Supp. 2d at 574. The Court emphasized, however,

> that it [did] not conclude that the *Pearce* presumption applies simply because the post-trial sentence exceeded a previous plea offer. Such a conclusion would be contrary to well-established Supreme Court precedent and common sense. Instead, consistent with well-settled Supreme Court jurisprudence, the Court [found] that the *Pearce* presumption [was] warranted where the trial court stated, pre-trial, in the context of plea negotiations, that she *would* impose the non-mandatory statutory maximum if the defendant went to trial, and then imposed that sentence after trial.

*Id.* at 577. Nothing analogous occurred in the context of the resentencing proceeding.

---

[6] As discussed in *Izaguirre I*, 856 F. Supp. 2d at 573-74, other courts have reached the same conclusion. *See, e.g.*, *Correia*, 364 F.3d at 388 ("The same [*Pearce*] presumption may arise when a criminal defendant rejects a plea agreement—and with it the prospect of a more lenient sentence—and elects instead to exercise his constitutional right to a jury trial.").

11

Justice Diamond did not preside over petitioner's trial or first sentencing proceeding, nor is he alleged to have communicated with petitioner prior to imposing resentence. Thus, as respondent correctly notes, "Justice Diamond had no 'personal stake' in petitioner's prior conviction and no motivation to engage in self-vindication." (Resp't's Opp'n Br., ECF No. 12, at 16.) Indeed, Justice Diamond was "not even a County Court judge (as was the trial judge)." (*Id*.)

Further, there is no merit to petitioner's argument that the "presumption of vindictiveness was triggered by [County Court] Judge Berkowitz, when she specifically told petitioner he 'will do 25 years in prison' if found guilty after trial," and that "[i]t was upon re-sentencing wherein the objective information to rebut any presumption of vindictiveness was to be employed." (Pet'r's Reply Br., ECF No. 15, at 7-8.) As set forth above, the *Pearce* inquiry applies to the proceeding that is the subject of the vindictiveness challenge—in this case, the resentencing—and in the Memorandum and Order, the Court specifically directed that another judge resentence petitioner so as to avoid any claim as to a "reasonable likelihood of vindictiveness." There is no evidence in the record that Justice Diamond made any statements or exhibited any behavior that warrants application of the *Pearce* presumption, and therefore, petitioner is mistaken to suggest that that presumption "carried-over" from his prior County Court sentencing proceeding.

Finally, even assuming that the *Pearce* presumption applied, the Court finds—unlike in *Izaguirre I*—that the resentencing court "affirmatively state[d] sufficient reasons for the sentence imposed in order to rebut the presumption that it was motivated by actual vindictiveness in imposing the maximum statutory sentence . . . ." *Izaguirre I*, 856 F. Supp. 2d at 577. Before imposing resentence, Justice Diamond reviewed the Memorandum and Order, "the entire trial transcript[,] and the probation report" and on that basis concluded that (1) petitioner's guilt was established beyond a reasonable doubt; (2) there was no justification or defense for petitioner's "senseless" and "cruel" crime; and (3) petitioner's "refusal even at this date to accept responsibility or show any remorse for what he did" was striking. (S. at 11.) He also heard testimony and argument from the State, Valle's father, petitioner's counsel, and petitioner, and Justice Diamond stated, "I don't see anything here in front of me based upon the proceedings here this morning to sentence the petitioner to anything but the maximum that is allowed by law." (*Id*. at 12.) In sum, the record reflects that Justice Diamond imposed resentence following a *de novo* appraisal of the relevant factors and "based on objective information concerning identifiable conduct on the part of the defendant," *Pearce*, 395 U.S. at 726; *see also Somerville v. Hunt*, No. 08-CV-1307, 2011 WL 795073, at *10 (E.D.N.Y. Feb. 28, 2011), sufficient to overcome any presumption of vindictiveness.[7]

Thus, for the foregoing reasons, the Second Department's determination that petitioner's vindictiveness claim lacked merit was not contrary to or an unreasonable

---

[7] Petitioner's argument that the resentencing court "did not consider any new conduct or events discovered since sentencing which suitably explained an imposition of the same 25-year sentence" is not a basis for a finding of vindictiveness. (Pet'r's Reply Br. at

8.) First, it does not follow that, because Justice Diamond did not mention post-sentencing conduct, he did not consider it. In any event, the failure to take such conduct into consideration would not, by itself, demonstrate vindictiveness.

application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

3. Harsh and Excessive Resentence

Petitioner also alleges that his "[re]sentence of twenty-five years' imprisonment was unduly harsh and excessive." (Pet. at 9.) However, the Court squarely rejected an identical claim in *Izaguirre I*, holding that, "to the extent that [p]etitioner relie[d] on state law as a ground for an excessive sentence claim, such a claim is not cognizable on habeas review." 856 F. Supp. 2d at 571 (citing, *inter alia*, *Wilson v. Ercole*, No. 06-cv-533 (DLI), 2009 WL 792089, at *11 (E.D.N.Y. Mar. 23, 2009)). In addition,

> to the extent [p]etitioner argue[d] that his [first] sentence was excessive and therefore cruel and unusual punishment under the Eighth Amendment, [p]etitioner's claim [was] not reviewable by this Court since, "when a sentence is within [the range of years prescribed by law], a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal."

*Id.* (quoting *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989)) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

Here, as the Court previously found, "[p]etitioner was convicted by a jury of Manslaughter in the First Degree, a class B violent felony punishable by as many as twenty-five years in prison." *Id.* (citing N.Y. Penal L. §§ 120.20(1), 70.02(a)(1), (a)(3)). "Thus, the twenty-five year sentence imposed by the [Supreme] Court was within the statutory range and [p]etitioner's claim that it is excessive is beyond this Court's review." *Id.* In any event, even if the Court could review a sentence within the range prescribed by state law, the Court would find no basis in this case to conclude that petitioner's resentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of petitioner's crime. *Id.* at 571 n.14.

Accordingly, the Second Department's determination that petitioner's excessiveness claim lacked merit was also not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

4. Failure to Obtain a New Probation Report

Lastly, petitioner argues that the Court should grant habeas relief because, "although [petitioner] was re-sentenced on June 14, 2012—some seven years after his original sentence on September 9, 2005—the [Supreme] Court failed to obtain an updated probation report." (Pet. at 11.) However, this claim is also procedurally defaulted and otherwise lacks merit.

a. Procedural Default

As with petitioner's first claim for relief, respondent argued on direct appeal that this argument was unpreserved because petitioner did not ask the resentencing court for a new probation report. (*See* Rep't's Appellate Br. at 33 (citing Pet'r's Appellate Br. at 22 (acknowledging that petitioner's "counsel did not request an updated probation report")).) Thus, the Second Department found that the preservation doctrine precluded appellate review. *Izaguirre*, 35 N.Y.S.3d at 655.

As discussed *supra*, New York's preservation rule is an independent and

adequate state procedural ground. *See Garvey*, 485 F.3d at 715-16; *Glenn*, 98 F.3d at 724-25.[8] In addition, petitioner has not alleged or otherwise shown that denying habeas relief based on this claim would result in a miscarriage of justice. *See Coleman,* 501 U.S. at 750. Thus, the Court finds that this aspect of petitioner's habeas petition is procedurally barred from federal review.

### b. Merits

Even if the procedural bar did not apply, the Court would deny habeas relief on the merits because petitioner's probation report claim does not implicate a federal right.

"[H]abeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). As other courts in this circuit have correctly held, "the failure to await an updated presentence report is a matter of state law that does not implicate federal constitutional rights." *Roberts v. Superintendent, Groveland Corr. Facility*, 26 F. Supp. 2d 684, 686 (S.D.N.Y. 1998); *see also Franco v. Mazzuca*, No. 00-CV-4340 (JBW), 2003 WL 21850280, at *4 (E.D.N.Y. July 29, 2003) ("The instant claim—that the court failed to order and consider an updated probation report before sentencing—is founded entirely on state law and does not implicate any federal right." (citing *People v. Thompson*, 609 N.Y.S.2d 79, 79 (App. Div. 2d Dep't 1994))); *Guzman v. Rivera*, No. 06 CIV. 3681 SCR LMS, 2010 WL 4242833, at *8 (S.D.N.Y. Mar. 17, 2010) ("Respondent is correct in the contention that the procedure of sentencing is exclusively a matter of state law."), *report and recommendation adopted*, No. 06 CIV. 3681 RO, 2010 WL 4258923 (S.D.N.Y. Oct. 27, 2010); *People v. Kuey*, 83 N.Y.2d 278, 282 (1994) (holding that, under New York Criminal Procedure Law § 390.20, "the decision whether to obtain an updated report at resentencing is a matter resting in the sound discretion of the sentencing Judge").

Indeed, in his reply brief, petitioner cites only New York cases in support of his claim that Justice Diamond should have obtained a new probation report prior to resentencing.[9] (*See* Pet'r's Reply Br. at 11-12.) Further, contrary to petitioner's contention (*id*. at 10-11), the Court does not find that the resentencing court's failure to obtain a new probation report impacted the "fundamental fairness" of that proceeding so as to constitute a due process violation. *See, e.g.*, *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). As discussed *supra*, the resentencing hearing was conducted in a fair and impartial manner.

### IV. CONCLUSION

For the foregoing reasons, petitioner is not entitled to habeas relief. Accordingly, this petition for a writ of habeas corpus is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). In addition, because the petition clearly lacks merit, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and,

---

[8] The Second Department's reliance on the preservation doctrine was also not exorbitant in this case. *See supra* note 5.

[9] Petitioner's attempt to distinguish *Franco* on the basis that "an updated pre-sentence report *was in fact* prepared" in that case is unpersuasive. (Pet'r's Reply Br. at 13.) Although that characterization is factually correct, the district court nevertheless determined that habeas relief was unwarranted based on the state "court's alleged failure to consult the update[d] report" because that claim only implicated a state law issue. *Franco*, 2003 WL 21850280, at *4.

therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

    SO ORDERED.

    _____
    JOSEPH F. BIANCO
    United States District Judge

Dated: October 10, 2017
   Central Islip, New York

    \*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Andrea M. DiGregorio, Assistant District Attorney, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, New York 11501.